**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JOHN KLIESH, | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| SELECT PORTFOLIO SERVICING, | : | No. 12-548 |
| INC.; and CREDIT SUISSE FIRST | : | |
| BOSTON (U.S.A.); and ECKERT | : | |
| SEAMANS CHERIN & MELLOTT, | : | |
| LLC. | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM ON DEFENDANTS'
MOTION TO PRECLUDE AND MOTION TO DISMISS**

**Baylson, J.**                                                                                   **June 29, 2012**

Plaintiff John Kliesh ("Kliesh" or "Plaintiff") brings this action against Defendants Select

Portfolio Servicing, Inc. ("SPS"), Credit Suisse First Boston (U.S.A.) ("CS") and Eckert Seams

Cherin & Mellott, LLC ("ESCM," and together with SPS and CS, "Defendants"), demanding

rescission of a mortgage contract and $10 million in damages for duress, unjust enrichment,

intentional infliction of emotional distress, civil conspiracy, and violations of the Truth in

Lending Act ("TILA") and Pennsylvania State Constitution.  Presently before the Court are

Defendants' Motion to Preclude Plaintiff from Commencing Further Actions (ECF No. 2) and

Defendants' Motion to Dismiss Pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(5)

and 12(b)(6).  For the following reasons, Defendants' Motion to Preclude is DENIED,

Defendants' Motion to Dismiss is GRANTED, and Plaintiff's claims are DISMISSED with

prejudice.

1

I.      **Factual and Procedural Background**

A.      **The State Foreclosure Action**

On September 18, 1997, Plaintiff obtained a mortgage for a property located in

Morrisville, Pennsylvania.  (Mortgage Agreement, attached to Defs.' Mem. Law Supp. as Ex. I)

SPS is the current assignee of that mortgage.  Mfrs. & Traders Trust Co. v. Kliesh, No. 2005-

06538-18-1 (Pa. Ct. Comm. Pleas Bucks Cnty. Aug. 29, 2007), aff'd sub nom. Select Portfolio

Servicing Inc. v. Kliesh, No. 2273 EDA 2007, 964 A.2d 453 (Table) (Pa. Super. Ct. Dec. 1,

2008). In February 2003, Plaintiff defaulted on his mortgage payments. On October 4, 2005, SPS

commenced a mortgage foreclosure action (the "State Foreclosure Action") against Plaintiff in

the Court of Common Pleas of Bucks County, Pennsylvania.

Plaintiff filed various counterclaims in the mortgage foreclosure action, including, among

other things:

> (i) that SPS violated various Federal and State regulations, including Act 91
> notice of foreclosure and "collection practices;" and
> (ii) that SPS used an "ILLEGAL Mortgage Contract" to seek summary judgment
> in the State Foreclosure Action, and caused Plaintiff "multiple severe hardships
> consisting of financial, credit, Mental stress and Health endangerment, etc."

(Pl.'s Mot. of Counterclaims, attached to Defs.' Mem. Law Supp. as Ex. J.)

On August 28, 2007, the Pennsylvania Court of Common Pleas of Bucks County, the

Honorable John J. Rufe presiding, granted summary judgment in favor of SPS.  Mfrs. & Traders

Trust Co. v. Kliesh, No. 05-06538-18-1 (Pa. Ct. Comm. Pleas Bucks Cnty. Aug. 29, 2007). On

September 4, 2007, Plaintiff filed a Motion for Reconsideration and Notice of Appeal (Pa. Ct.

Comm. Pleas Dkt. 4, attached to Defs.' Mem. Law Supp. as Ex. A), which Judge Rufe denied on

October 9, 2007, noting that both were "simply attempts to prolong [the] litigation with further

baseless allegations." Mfrs. & Traders Trust Co. v. Kliesh, No. 2005-06538-18-1, slip op. at 5 (Pa. Ct. Comm. Pleas Bucks Cnty. Oct. 9, 2007) (attached to Defs.' Mem. Law Supp. as Ex. D).

Plaintiff thereafter appealed to the Pennsylvania Superior Court. On September 26, 2008, the Superior Court affirmed the lower court's grant of summary judgment, finding that Plaintiff's allegations that SPS "acted in a predatory manner by using a fraudulent mortgage contract to obtain unlawful arrearages," and took "illegal action" that "damaged [Plaintiff's] credit rating and caused him severe hardship," were merely "bald assertions of impropriety" without any support of factual evidence. Select Portfolio Servicing Inc. v. Kliesh, No. 2273 EDA 2007, slip op. at 14, 964 A.2d 453 (Table) (Pa.. Super. Ct. Sept. 26, 2008). On December 1, 2008, the Superior court subsequently denied Plaintiff's application requesting reconsideration of its decision. Select Portfolio Servicing Co. v. Kliesh, No. 2273 EDA 2007 (Pa. Super. Ct. Dec. 1, 2008) (per curiam) (attached to Defs.' Mem. Law Supp. as Ex. D).

Plaintiff then appealed the Superior Court's decision to the Pennsylvania Supreme Court. On May 20, 2009 the Supreme Court denied Plaintiff's Petition for Allowance of Appeal from the Order of the Superior Court. Mfrs. & Traders Trust Co. v. Kliesh, 972 A.2d 483, 484 (Pa. 2009).

**B.    First Federal Action**

On June 16, 2009, Plaintiff filed an action in the Eastern District of Pennsylvania (the "First Federal Action"), asserting claims the subject matter of which was virtually identical to the subject matter of the counterclaims asserted in the State Foreclosure Action. Kliesh v. Select Portfolio Servicing Inc., No. 2-09-cv-02726, slip op. at 7-8 (E.D. Pa. June 28, 2010). In the First Federal Action, Plaintiff asserted the following self-styled claims against SPS and CS:

Count I: "fraudulent foreclosure action";

Count II: "violations of the Truth in Lending Act";

Count III: "unlawful enrichment";

Count IV: "violations of the Fair Credit Collection Act";

Count V: "violations of the Fair Credit Reporting Act"; and

Count VI: "knowing and intentional harassment, intimidation, causing undue stress, financial hardship and endangering the health and well being of the plaintiff."

(Am. Compl. 1-9, attached to Defs. Mem. Law Supp. as Ex. F.)  SPS and CS moved for summary judgment, and on June 28, 2010, the Honorable Legrome D. Davis granted the motion. Kliesh v. Select Portfolio Servicing Inc., No. 2-09-cv-02726, slip op. at 15 (E.D. Pa. June 28, 2010).

The Third Circuit affirmed the grant of summary judgment on multiple grounds. Specifically, the Third Circuit held: (i) that the Rooker-Feldman doctrine deprived the district court of subject matter jurisdiction over Count I; (ii) that Count I was alternatively barred by issue preclusion; (iii) that the applicable statutes of limitations barred Counts II, IV and VI; and (iv) that Counts III and V failed to state a claim as a matter of law.  Kliesh v. Select Portfolio Servicing Inc., 419 F. App'x 268, 270-71 (3d Cir. 2011) (per curiam).[1]

**C.     This Second Federal Action**

On January 30, 2012, Plaintiff commenced the instant action by filing a Complaint (ECF No. 1), asserting claims the subject matter of which is virtually identical to the subject matter of the state court counterclaims and the claims asserted in the First Federal Action.  In his Complaint, Plaintiff brings causes of action for, what he describes as:

Count I: "fraudulent foreclosure action";

_____

[1]A more detailed discussion of the Third Circuit's opinion follows below.

-4-

Count II: "contract fraud";
Count III: "unjust enrichment";
Count IV: "civil conspiracy";
Count V: "violations of the Pennsylvania State Constitution"; and
Count VI: "damages by way of harassment, endangerment of health and well being, mental anguish and financial hardship."

Plaintiff seeks rescission of the mortgage and total damages in the amount of $10 million – $7 million from SPS and CS, and $3 million from ESCM, respectively.  (Compl. ¶ 55.)

On February 14, 2012, Defendants filed a Motion to Preclude Plaintiff from Commencing Further Actions (ECF No. 2) and a Motion to Dismiss Pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(5) and 12(b)(6) (ECF No. 3), both of which are presently before the Court.  On February 27, 2012, Plaintiff filed Responses in Opposition thereto.  (ECF Nos. 6 & 7.)

The table below lists the purported causes of action asserted in the State Foreclosure Action, the First Federal Action and this Second Federal Action.

|  | State Foreclosure Action | First Federal Action | Second Federal Action |
|---|---|---|---|
| **Causes of Action** | 1. Illegal Mortgage Contract<br><br>2. Violations of Federal Act 91 Notice of Foreclosure and Collection Practices<br><br>3. Violations of Pennsylvania State Regulations<br><br>4. Multiple Severe Financial, Mental and Physical Hardships | 1. Fraudulent Foreclosure Action<br><br>2. TILA Violations<br><br>3. Unlawful Enrichment<br><br>4. Violations of the Fair Credit Collection Act<br><br>5. Violations of the Fair Credit Reporting Act<br><br>6. Knowing and Intentional Harassment | 1. Fraudulent Foreclosure Action<br><br>2. Contract Fraud<br><br>3. Unjust Enrichment<br><br>4. Civil Conspiracy<br><br>5. Violations of the Pennsylvania State Constitution<br><br>6. Damages by way of Harassment |

## II.     The Parties' Contentions

Defendants contend that the Complaint should be dismissed for several reasons. First, Defendants contend that the <u>Rooker-Feldman</u> doctrine deprives this Court of subject-matter jurisdiction over several claims raised by Plaintiff, because those allegations require this Court to review and reject the judgment rendered in the State Foreclosure Action. Defendants also argue that the doctrines of collateral estoppel and res judicata bar all of Plaintiff's claims because he raised them in one form or another in the State Foreclosure Action and/or the First Federal Action.  Defendants further contend that the applicable statutes of limitations bar all of Plaintiff's claims and that equitable tolling does not apply.[2]

In response, Plaintiff contends that <u>Rooker-Feldman</u> is inapplicable because the State Foreclosure Action is ongoing and the Complaint does not seek to disturb the judgment rendered in that action.  Similarly, Plaintiff also contends that the doctrines of collateral estoppel and res judicata do not apply because the State Foreclosure Action is ongoing and CS and ESCM were not parties to that action.  Plaintiff further contends that equitable tolling applies to the applicable statutes of limitations because the injuries caused by Defendants' alleged misconduct are

---

[2]Defendants make several subsidiary arguments in support of their Motion to Dismiss. Defendants contend that Plaintiff failed to properly serve SPS; that ESCM is immune from liability under state law because all actions taken by ESCM were in the course of their representing SPS and CS; and that Plaintiff had previously released all claims relating to the servicing of his mortgage.

In response to Defendants' subsidiary arguments, Plaintiff contends that he is in compliance with service of process and pleading requirements; that ESCM is not immune from liability because it intentionally committed fraud on behalf of its clients SPS and CS; and that Defendants may not assert the defense of release. Because the Court will dismiss the Complaint on alternative grounds, the Court need not address these arguments at this time.

ongoing.

## III.     Legal Standards

### A.       Standard of Review for Motion to Dismiss under Rule 12(b)(1)

A Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction presents either a facial or a factual attack.  CNA v. United States, 535 F.3d 132, 139 (3d Cir. 2008); see Fed. R. Civ. P. 12(b)(1). A facial attack "concerns an alleged pleading deficiency, whereas a factual attack concerns the actual failure of a plaintiff's claim to comport factually with the jurisdictional prerequisites."  CNA, 535 F.3d at 139 (internal quotation marks omitted).

As both parties have provided the Court with a plethora of documents submitted as exhibits supplementing their motions, and because the parties do not dispute the facts material to the issue at hand, we consider Defendants' challenges to be factual, not facial, ones.  See Gould Electronics, Inc. v. United States, 220 F.3d 169, 176-77 (3d Cir. 2000).

The Third Circuit has stated that when parties challenge subject matter jurisdiction through a factual attack, the court is permitted to review documents outside the pleadings.  Gould 220 F.3d at 176. The Gould Court explained that:

> In International Ass'n of Machinists & Aerospace Workers v. Northwest Airlines, Inc., this Court outlined procedures for ensuring that a ruling on a Rule 12(b)(1) factual attack be based on an adequate factual record.  See 676 F.2d 700, 711-12 (3d Cir. 1982). If the defendant raises no challenge to the facts alleged in the pleadings, the court may rule on the motion by accepting the allegations as true. See id. at 711. If the defendant contests any allegations in the pleadings, by presenting evidence, the court must permit the plaintiff to respond with evidence supporting jurisdiction.  See id. at 711-12. The court may then determine jurisdiction by weighing the evidence presented by the parties.  See id. However, if there is a dispute of a material fact, the court must conduct a plenary trial on the contested facts prior to making a jurisdictional determination.  See id. at 712.

Id. at 177; see also Silicon Economics, Inc. v. Fin. Accounting Found., No. 11-cv-163, 2011 WL

3742182, at *3 (D. Del. Aug. 18, 2011) (Baylson, J.) (finding "there are three important consequences of a factual attack: (1) there is no presumption of truthfulness; (2) the plaintiff bears the burden of proving subject matter jurisdiction; and (3) the Court has authority to make factual findings on the issue, and can look beyond the pleadings to do so.").

### B.     Standard of Review for Motion to Dismiss under Rule 12(b)(6)

Under the notice pleading requirements of Federal Rule of Civil Procedure 8(a)(2), a complaint must contain only "a short and plain statement of the claim showing that the pleader is entitled to relief." To survive a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), the complaint must plead sufficient factual allegations that, taken as a whole, state a facially plausible claim for relief. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A complaint satisfies the threshold of facial plausibility if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (citing Twombly, 550 U.S. at 556).

Iqbal explained that although a court must accept as true all of the factual allegations contained in a complaint, that requirement does not apply to legal conclusions; therefore, pleadings must include factual allegations to support the legal claims asserted. Id. at 678, 685. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678 (citing Twombly, 550 U.S. at 555); see also Phillips v. Cnty. of Allegheny, 515 F.3d 224, 232 (3d Cir.2008) ("We caution that without some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice,' but also the 'grounds' on which the claim rests." (citing Twombly, 550 U .S. at

556 n.3)).  Accordingly, to survive a motion to dismiss, a plaintiff must plead "factual content

that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged."  Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

      After Iqbal, when presented with a motion to dismiss for failure to state a claim, district

courts should conduct a two part analysis: First, the factual and legal elements of a claim should

be separated–the district court must accept all of the complaint's well-pleaded facts as true, but

may disregard any legal conclusions; second, a district court must then determine whether the

facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for

relief." In other words, a complaint must do more than allege the plaintiff's entitlement to relief:

a complaint has to "show" such entitlement with its facts.  Fowler v. UPMC Shadyside, 578 F.3d

203, 210-11 (3d Cir. 2009).

      Additionally, in reviewing Plaintiff's submission, which he filed pro se, the Court

liberally construes it in his favor.  See Erickson v. Pardus, 551 U.S. 89, 94 (2007). A pro se

submission "can only be dismissed for failure to state a claim if it appears 'beyond doubt that the

plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' "

Estelle v. Gamble, 429 U.S. 97, 106 (1976) (quoting Haines v. Kerner, 404 U.S. 519 (1972)).[3]

## IV.   Discussion

### A.   Rooker-Feldman Doctrine

Defendants move to dismiss the Complaint pursuant to Rule 12(b)(1) on the ground that

---

    [3]Because Rooker-Feldman, the appropriate statutes of limitation, Rule 12(b)(6), and the
doctrines of res judicata and collateral estoppel provide sufficient grounds for dismissal of this
action, the Court need not address Defendants contention that the Complaint should be dismissed
pursuant to Rule 12(b)(5) for lack of proper service.

the Rooker-Feldman doctrine deprives this Court of jurisdiction over all of Plaintiff's claims.

The Rooker-Feldman doctrine is derived from 28 U.S.C. § 1257 (conferring certiorari power

solely upon the United States Supreme Court), and "the well-settled understanding that the

Supreme Court of the United States, and not the lower federal courts, has jurisdiction to review a

state court decision." Desi's Pizza, Inc. v. City of Wilkes-Barre, 321 F.3d 411, 419 (3d Cir.

2003) (quoting Parkview Assocs. P'ship v. City of Lebanon, 225 F.3d 321, 324 (3d Cir. 2000)).

This limitation on the lower federal district courts is jurisdictional, and therefore cannot be

waived, and even may be raised sua sponte by the court at any point in the proceedings.

Hansford v. Bank of America, No. 07-cv-4716, 2008 WL 4078460, at *3 & n.1 (E.D. Pa. Aug.

22, 2008) (citing In re Randall, 358 B.R. 145, 154 n.8 (Bankr. E.D. Pa. 2006) ("Because the

Rooker-Feldman doctrine is jurisdictional in nature, its applicability must be determined before

considering the defendants' arguments regarding the applicability of res judicata.")).

 The Rooker-Feldman doctrine is limited to cases "brought by state-court losers

complaining of injuries caused by state-court judgments rendered before the district court

proceedings commenced and inviting district court review and rejection of those judgments."

Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005). Yet, Rooker-Feldman

"is not implicated 'simply because a claimant brings to federal court a matter previously litigated

in state court.'" Great Western Mining & Mineral Co. v. Fox Rothschild LLP, 615 F.3d 159, 166

(3d Cir. 2010) (quoting Exxon Mobil Corp., 544 U.S. at 293)). Where "a federal plaintiff

present[s] some independent claim, albeit one that denies a legal conclusion that a state court has

reached in a case to which he was a party . . . , then there is jurisdiction and state law determines

whether the defendant prevails under principles of preclusion." Id. (internal quotation omitted);

see also Parkview Assoc., 225 F.3d at 329 (explaining that Rooker-Feldman is not a jurisdictional version of preclusion).

Filing a complaint in a federal district court is the functional equivalent of an appeal from a state court judgment, and so barred by Rooker-Feldman, in two instances: "(1) if the federal claim was actually litigated in state court prior to the filing of the federal action; or (2) if the federal claim is inextricably intertwined with a state adjudication such that federal relief can only be predicated upon a conclusion that the state court was wrong."  Hansford, 2008 WL 4078460, at *3 (citing Lance v. Dennis, 546 U.S. 459, 464 (2006)).

A federal claim is inextricably intertwined with a prior state court judgment when "(1) the federal court must determine that the state court judgment was erroneously entered in order to grant the requested relief, or (2) the federal court must take an action that would negate the state court's judgment. . . . In other words, Rooker-Feldman does not allow a plaintiff to seek relief that, if granted, would prevent a state court from enforcing its orders."  In re Knapper, 407 F.3d 573, 581 (3d Cir. 2005) (quoting Walker v. Horn, 385 F.3d 321, 330 (3d Cir. 2004)).

In the foreclosure context, the Rooker-Feldman doctrine bars claims for rescission if such claims would have the effect of "undoing" a state court foreclosure judgment.  Ayres-Fountain v. Eastern Savings Bank, 153 F. App'x 91, 92 (3d Cir. 2005); Hansford, 2008 WL 4078460, at *5 ("Any claim for rescission of the mortgage . . . would effectively 'undo' the state court's foreclosure judgment and would prevent the state court from enforcing its order.").

A claim for rescission of a mortgage contract filed in federal court has the effect of undoing a state court foreclosure judgment if it negates the state court's determination of the underlying mortgage agreement's validity.  In re Madera, 586 F.3d 228, 232 (3d Cir. 2009).

-11-

Conversely, any claim for money damages against private parties is not barred by Rooker-Feldman because such claims cannot be pursued in state foreclosure suits.  Hansford, 2008 WL 4078460, at *4 ("[O]nly actions related to the mortgaged property may be pursued in a state foreclosure proceeding. Actions for money damages against private parties do not find their home in state foreclosure suits."); see also In re Faust, 353 B.R. 94, 101 (E.D. Pa. 2006) (following entry of judgment in lender's favor in state court mortgage foreclosure action, Rooker-Feldman doctrine barred rescission claim, but did not bar action to recoup money damages). Accordingly, insofar as Plaintiff argues harm due to the judgment reached in the State Foreclosure Action, such claims are barred by Rooker-Feldman, while any contentions of harm caused by the Defendants, though not barred by Rooker-Feldman, are, for reasons discussed below, barred by the doctrine of res judicata.

Here, the Rooker-Feldman doctrine bars Counts I and II of the Complaint because those claims are inextricably intertwined with the judgment reached in the State Foreclosure Action. Plaintiff seeks not only $10 million in damages, but also the "termination of the claimed Mortgage Contract" (Compl. ¶ 1), which served as the basis of the state court's order granting summary judgment in the State Foreclosure Action. Termination, or rescission, of the mortgage contract is barred by Rooker-Feldman, because "[i]mplicit in a foreclosure judgment is the court's determination that the mortgage is valid."  Hansford, 2008 WL 4078460, at *5 (quoting Madera v. Ameriquest Mortg. Co., 388 B.R. 586, 597 (E.D. Pa. 2008)).

In the State Foreclosure Action, the state trial court granted summary judgment in favor of SPS because there was "no issue of material fact that Kliesh was in default on the mortgage." Mfrs. & Traders Trust Co. v. Kliesh, No. 2005-6538-18-1, slip op. at 1 (Pa. Ct. Comm. Pleas

-12-

Bucks Cnty. Oct. 9, 2007). In the instant action, Plaintiff is effectively seeking to reverse this judgment by asserting claims for rescission of the mortgage contract.  At a February 16, 2007 deposition, Plaintiff admitted that he had been in default on his mortgage, taxes, and insurance since February 2003.  Select Portfolio Servicing Co. v. Kliesh, No. 2273 EDA 2007, slip op. at 3, 964 A.2d 453 (Table) (Pa. Super Ct. Sept. 26, 2008). Nevertheless, he filed counterclaims to the foreclosure action "alleging an illegal mortgage contract, imposition of unlawful fees, harassment . . . [and that SPS] had failed to provide [Kliesh] with the Truth-in-Lending disclosure statement and notice of its intent to foreclose."  Id.

On appeal, the Superior Court of Pennsylvania affirmed the trial court's judgment, noting that the trial court "properly determined there was no genuine issue of material fact regarding the existence of the obligation or [Kliesh's] default on his mortgage obligations, and no issue of fact could be established by further discovery or expert report."  Id. at 14.

Counts I and II of the instant Complaint simply recite – albeit in slightly different language –  the allegations previously raised by Plaintiff as counterclaims in the State Foreclosure Action.  Counts I and II – alleging that the mortgage foreclosure judgment was fraudulent and that the mortgage contract is voidable as a result of TILA violations, misrepresentation, and duress – directly implicate the judgment reached in the State Foreclosure Action that the underlying mortgage agreement was valid and enforceable against Plaintiff. Accordingly, the Rooker-Feldman doctrine bars Counts I and II of the Complaint.

The Third Circuit previously reached a similar conclusion in the First Federal Action, affirming that, insofar as Plaintiff was alleging injury by the "state-court judgment" and not "by the defendants," the claim is barred by the Rooker-Feldman doctrine.  Kliesh v. Select Portfolio

Servicing Inc., 419 F. App'x 268, 270-71 (3d Cir. 2011). While Plaintiff alleges in the Complaint that he is not attacking the judgment reached in the State Foreclosure Action (Compl. ¶ 12), it is impossible to interpret the Complaint as alleging otherwise, as Counts I and II allege that SPS used a fraudulent mortgage agreement and fraudulent assignment documents to achieve an "erroneous" "Summery [sic] Judgment" in the State Foreclosure Action. (Id. at 11-12.) In Count II of his Complaint, Plaintiff also alleges, under various theories, "the claimed Mortgage Contract is in fact avoidable [sic] contract" (id. at ¶ 26), thereby intending that the Court negate the determination, made by the state court in the State Foreclosure Action, that the mortgage agreement at the heart of those foreclosure proceedings was, and is, a valid contract.

The Court notes that CS and ESCM were not defendants in the State Foreclosure Action. However, their absence does not preclude the Court from applying Rooker-Feldman. Indeed, the doctrine "only requires identity of the party against whom the doctrine is being invoked. . . . [R]equiring identity [of the party] would effectively allow plaintiffs to reverse a state decision in federal district court merely by making an adjustment in the named defendants, establishing a loophole that would undermine the spirit and intent of Rooker-Feldman." Bass v. Butler, 116 F. App'x 376, 385 (3d Cir. 2004).

Accordingly, this Court lacks subject-matter jurisdiction over Counts I and II of the Complaint.

### B.     Insufficiency of Factual Allegations to State a Claim for Relief

Defendants also move to dismiss the Complaint pursuant to Rule 12(b)(6) on the ground that it contains insufficient factual allegations to state a claim for relief. The Court agrees.

1.        **Count III: "Unjust Enrichment"**

In Pennsylvania, a party seeking to plead unjust enrichment must allege the following elements: "(1) a benefit conferred on the defendant by the plaintiff; (2) appreciation of the benefit by the defendant; and (3) the defendant's acceptance and retention of the benefit 'under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value.'" Giordano v. Glaudio, 714 F. Supp. 2d 508, 530 (E.D. Pa. 2010) (quoting Filippi v. City of Erie, 968 A.2d 239, 242 (Pa. Commw. Ct. 2009)).

The most important element is "whether the enrichment of the defendant is unjust. The doctrine does not apply simply because the defendant may have benefitted as a result of the actions of the plaintiff." Stoeckinger v. Presidential Fin. Corp. of Del. Valley, 948 A.2d 828, 833 (Pa. Super. Ct. 2008) (internal quotations omitted).

Additionally, "'the quasi-contractual doctrine of unjust enrichment [is] inapplicable when the relationship between parties is founded on a written agreement or express contract.'" Farm Credit Leasing Servs. Corp. v. Ferguson Packaging Mach., Inc., No. 07-cv-1900, 2007 WL 4276841, at *10 (E.D. Pa. Dec. 3, 2007) (quoting Benefit Trust Life Ins. Co. v. Union Nat'l Bank, 776 F.2d 1174, 1177 (3d Cir. 1985)). Thus, "where the parties cannot agree that such a contract exists, it would be improper to grant dismissal." Kump v. State Farm Fire & Cas. Co., No. 3:12-cv-72, 2012 WL 1123897, at *3 (M.D. Pa. Apr. 4, 2011) (citing Integrated Waste Solutions, Inc. v. Goverdhanam, No. 10-cv-2155, 2010 WL 4910176, at *15 n.8 (E.D. Pa. Nov. 30, 2010)).

Here, the parties dispute the existence of a valid contract, specifically, the mortgage agreement at the heart of the State Foreclosure and the First Federal Actions.  However,

Plaintiff's insistence that SPS unjustly benefitted from the "Fraudulent Mortgage Contract" conflicts with the finding in the preceding actions that both the foreclosure proceedings and the mortgage agreement itself were valid.  Select Portfolio Servicing Co. v. Kliesh, No. 2273 EDA 2007, slip op. at 14, 964 A.2d 453 (Table) (Pa. Super. Ct. Sept. 26, 2008); Kliesh v. Select Portfolio Servicing Inc., No. 09-cv-2726, slip op. at 7-8 (E.D. Pa. June 28, 2010); Kliesh v. Select Portfolio Servicing Inc., 419 F. App'x 268, 271 (3d Cir. 2011).  As noted by Judge Davis in the First Federal Action, because "Plaintiff has repeatedly stated that this action arises from the mortgage contract . . . any claim for unjust enrichment is barred." Kliesh v. Select Portfolio Servicing Inc., et. al., No. 09-cv-2726, slip op. at 10 (E.D. Pa. June 28, 2010).

### 2.      Count IV: "Civil Conspiracy"

In Count IV, Plaintiff alleges that Defendants took part in a "civil conspiracy" to defraud him by way of the State Foreclosure Action, using the "fraudulent" mortgage agreement. (Compl. ¶¶ 33-38.) "A civil conspiracy is a combination of two or more persons acting in concert to commit an unlawful act, or to commit an act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong or injury upon another, and an overt act that results in damage." Langweiler v. Borough of Newtown, No. 10-CV-3210, 2010 WL 5393529, at *5 (E.D. Pa. Dec. 29, 2010) (Baylson, J.) (citing Adams v. Teamsters Local 115, 214 F. App'x 167, 172 (3d Cir. 2007)). As this Court has previously explained:

> The plaintiff must allege facts allowing an inference of combination, agreement, or understanding among all or between any defendants to violate the plaintiff's rights. Allegations of fact such as the period of the conspiracy, the object of the conspiracy, and actions of the conspirators taken to achieve that purpose are necessary. A mere incantation of the words 'conspiracy' or 'acted in concert' does not talismanically satisfy the pleading requirements for [facts to support] a conspiracy claim.

Langweiler, 2010 WL 5393529, at *6 (internal citations omitted).

While Plaintiff has recited the requisite "incantations," he has failed to support his allegations with any factual evidence.  In his Complaint, Plaintiff cites the "Fraudulent Foreclosure Action" initiated by SPS and ESCM throughout this series of lawsuits as evidence of such a "conspiracy."  (Compl. ¶¶ 35-36.)  However, as discussed above, the Pennsylvania state courts determined not only that the mortgage agreement was valid, but also that the foreclosure process commenced by SPS was itself legitimate and in accordance with federal and state law.

Thus, as Plaintiff fails to produce any factual evidence that does not rise above mere recitations of previous claims or bald assertions of impropriety on the part of Defendants, the Court will dismiss Count IV for failure to state a claim.

### 3.      Count V: "Violations of Pennsylvania State Constitution"

While the precise cause of action Plaintiff asserts in Count V is unclear, the Court will construe his allegations according to the liberal pleading standards afforded pro se litigants. Estelle, 429 U.S. at 106. Plaintiff seemingly asserts violations of two sections of the Pennsylvania Constitution, (Compl. ¶¶ 39-41), namely, section 1, referred to as the "Reputation" section, and section 6, the so-called "Right to a Jury Trial in Civil Cases" section. However, Plaintiff does no more than rely on mere assertions of conspiracy and the alleged "Fraudulent Mortgage Contract," which served as the foundation for Plaintiff's allegations in the state Foreclosure Action and the First Federal Action. (Compl. ¶¶ 33-37, 40.)  Additionally, "[t]o date, neither Pennsylvania statutory authority nor appellate case law has authorized the award of money damages for a violation of the Pennsylvania Constitution."  Balleta v. Spadoni, No. 916

C.D. 2011, 2012 WL 2149743, at *5 (Pa. Commw. Ct. June 14, 2012) (quoting <u>Jones v. City of Phila.</u>, 890 A.2d 1188, 1208 (Pa. Commw. Ct. 2006)).[4]  "Neither have the federal courts recognized a civil cause of action for money damages under any provision of the Pennsylvania Constitution."  <u>Jones</u>, 890 A.2d at 1209 n.33.

> **4.**     **Count VI: "Damages by Way of Harassment, Endangerment of Health and Well Being, Mental Anguish and Financial Hardship"**

In Count VI, Plaintiff seeks "damages by way of harassment, endangerment of health and well being, mental anguish and financial hardship."  No such cause of action exists under Pennsylvania law.  However, construing the allegations liberally in favor of Plaintiff, the Court will treat Count VI as an attempt to state a claim for intentional infliction of emotional distress.

In Pennsylvania, to state a valid claim for intentional infliction of emotional distress a plaintiff must allege that: "(1) the defendant engaged in extreme and outrageous conduct; (2) the conduct caused the plaintiff severe emotional distress; and (3) the defendant acted intending to cause such distress or with knowledge that such distress was substantially certain to occur."  <u>Watson v. Haverford Twp. Police Dep't</u>, No. 10-cv-6731, 2012 WL 1900629, at *17 (E.D. Pa. May 25, 2012) (citing <u>Brown v. Muhlenberg Twp.</u>, 269 F.3d 205, 218 (3d Cir. 2001)). "Courts have defined 'extreme and outrageous' quite narrowly, finding that the conduct must 'go beyond all possible bounds of decency, and . . . be regarded as atrocious, and utterly intolerable in a civilized community.'"  <u>Id.</u> (quoting <u>Salerno v. Phila. Newspapers, Inc.</u>, 546 A.2d 1168, 1172 (Pa. Super. Ct. 1988)) (alterations in original).

---

[4]Plaintiff also alleges that Defendants' alleged conduct violated his rights secured under the United States Constitution.  To the extent Plaintiff seeks to maintain a claim under 42 U.S.C. § 1983, the Court notes that Defendants are not state actors and no plausible argument can be made that their alleged conduct constitutes state action.

Plaintiff's claim for intentional infliction of emotional distress fails on its face because his severe distress is allegedly caused by the actions of SPS and CS in connection with the State Foreclosure Action. It is well-settled that a defendant's reasonable pursuit of their legal rights cannot constitute extreme and outrageous conduct for purposes of establishing intentional infliction of emotional distress.  Clark v. Caln Twp., No. 09-1551, 1990 WL 99123, at *5 (E.D. Pa. July 11, 1990) ("When an individual does no more than insist on his legal rights in a permissible way, he will not be held liable for intentional infliction of emotional distress, even though he is aware that such insistence will cause emotional distress."); Numerof v. Cont'l Title Ins. Co., No. 87-cv-6874, 1987 WL 30135, at *5 (E.D. Pa. Dec. 24, 1987) ("Where a party has a legal right to proceed with foreclosure, the sending of a notice of intention to foreclose as required by state procedure can give rise to no cause of action for intentional infliction of emotional distress.").

### 5.      Conclusion Regarding Rule 12(b)(6) Contentions

The Court will not give Plaintiff any opportunity to amend his Complaint to add factual allegations. Plaintiff has had many years, and access to many documents relating to the transaction discussed in all three cases (many of which are attached to the pleadings and briefs in this case), to plead sufficient facts to meet his pleading burden. Plaintiff has failed to meet this burden and his legal attacks on others must cease.

### C.      Collateral Estoppel and Res Judicata

Under the Full Faith and Credit Statute, 28 U.S.C. § 1738, "judicial proceedings . . . shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of" the states from which they emerged. Section 1738 "has long been

-19-

understood to encompass the doctrines of res judicata, or 'claim preclusion,' and collateral estoppel, or 'issue preclusion.' " San Remo Hotel v. City & Cnty. of San Francisco, 545 U.S. 323, 336 (2005) (quoting Allen v. McCurry, 449 U.S. 90, 94-96 (1980)).

As the judgment in the State Foreclosure Action was entered in a Pennsylvania state court, this Court is required to apply Pennsylvania's preclusion law.  Kremer v. Chem. Constr. Corp., 456 U.S. 461, 466 (1982) ("Section 1738 requires federal courts to give the same preclusive effect to state court judgments that those judgments would be given in the courts of the State from which the judgments emerged.").

The Court notes that ESCM was not a defendant in either the State Foreclosure Action or the First Federal Action, but is named as a defendant in Counts IV, V and VI of the Complaint. In Pennsylvania, "[w]here an attorney represents a client in litigation or during arms length negotiations, the public interest demands that attorneys, in the proper exercise of their functions as such, not be liable to adverse parties for acts performed in good faith and for the honest purpose of protecting the interests of their clients."  Smith v. Griffiths, 476 A.2d 22, 26 (Pa. Super. Ct. 1984); see also Brown v. Delaware Valley Transplant Program, 539 A.2d 1372, 1375 (Pa. Super. Ct. 1988) (affirming the dismissal of claims against an attorney because counsel has immunity from suits related to actions "undertaken in connection with representation of a client in a judicial proceeding").

Therefore, unless "an attorney's conduct is motivated by malice or if he commits an intentional tort," Smith, 476 A.2d at 26, he may not become personally liable for damage suffered by a third person. Insofar as a "'complaint does not contain averments that counsel committed an intentional tort designed maliciously to cause harm,' that complaint fails to state a

claim on which relief may be granted." Rapid Circuits, Inc. v. Sun Nat'l Bank, No. 10-cv-6401, 2011 WL 1666919, at *4 (E.D. Pa. May 3, 2011) (quoting Aetna Electroplating Co. v. Jenkins, 484 A.2d 134, 136 (Pa. Super. Ct. 1984)).

Accordingly, the Court agrees with Defendants that ESCM has immunity from those allegations contained in Counts IV, V, and VI, because the underlying actions were taken on behalf of their clients in the process of litigation.

To the extent that Plaintiff has alleged intentional torts on behalf of ESCM, those causes of action are dismissed for failure to allege facts sufficient to state a claim upon which relief may be granted, as discussed above.

### 1.    Collateral Estoppel

Collateral estoppel, or issue preclusion, bars counts I, II, III and VI of the Complaint because Plaintiff litigated these same issues in two previous actions, the State Foreclosure Action and/or the First Federal Action.

"The prerequisites for the application of issue preclusion are satisfied when: '(1) the issue sought to be precluded [is] the same as that involved in the prior action; (2) that issue [was] actually litigated; (3) it [was] determined by a final and valid judgment; and (4) the determination [was] essential to the prior judgment.'" Burlington N. R.R. Co. v. Hyundai Merch. Marine Co., 63 F.3d 1227, 1231-32 (3d Cir. 1995) (quoting In re Graham, 973 F.3d 1089, 1097 (3d Cir. 1992)) (alterations in original); see also Parklane Hosiery Co. v. Shore, 439 U.S. 322, 327 n.5 (1979).

Non-mutual issue preclusion, as opposed to classic issue preclusion, which required mutuality between parties, bars a litigant from "advancing a position that he has presented and

lost in a prior proceeding against a different adversary." Peloro v. United States, 488 F.3d 163, 175 (3d Cir. 2007); see also Blonder-Tongue Labs, Inc. v. Univ. of Ill. Found., 402 U.S. 313, 324 (1971); Parklane Hosiery, 439 U.S. at 329.

"For defensive collateral estoppel–a form of non-mutual issue preclusion–to apply, the party to be precluded must have had a 'full and fair' opportunity to litigate the issue in the first action." Peloro, 488 F.3d at 175 (citing Parklane Hosiery, 439 U.S. at 328, 332; Blonder-Tongue Labs., 402 U.S. at 331, 333).

For Counts I and II, it is readily apparent that all the prerequisites for the application of issue preclusion are satisfied. The alleged "fraudulent foreclosure action" (Count I), along with the alleged voidability of the underlying mortgage contract due to misrepresentation, duress, and/or TILA violations (Count II), were litigated in the First Federal Action between Plaintiff and CS and SPS. Kliesh v. Select Portfolio Servicing Inc., et. al., No. 09-cv-2726, slip op. at 7-8 (E.D. Pa. June 28, 2010). As the Third Circuit recognized in that action, the "fraudulent foreclosure action" was actually litigated and received a final and valid judgment in the State Foreclosure Action, and therefore is "barred by principles of issue preclusion." Kliesh v. Select Portfolio Servicing Inc., 419 F. App'x 268, 270 (3d Cir. 2011).

Just as the validity of the mortgage contract was essential to the judgment reached in both the State Foreclosure Action and the subsequent First Federal Action, so too is the validity of the mortgage contract essential to the judgments reached in this action. Select Portfolio Servicing Co. v. Kliesh, No. 2273 EDA 2007, slip op. at 14, 964 A.2d 453 (Table) (Pa. Super. Ct. Sept. 26, 2008); see also Kliesh v. Select Portfolio Servicing Inc., No. 09-cv-02726, slip op. at 8 (E.D. Pa. June 28, 2010). Thus, Count II, alleging the voidability of the underlying mortgage contract due

to alternative theories of duress, TILA violations, and misrepresentation, is barred by issue preclusion.

Counts III and VI are likewise barred by issue preclusion. In reaching the decision in the First Federal Action that Plaintiff should be awarded no damages, Judge Davis considered and subsequently dismissed Plaintiff's claims for unjust enrichment (Count III) and intentional infliction of emotional distress (Count VI), finding that both claims (i) failed to state a claim upon which relief may be granted, and (ii) were filed outside the requisite statutes of limitations. Kliesh v. Select Portfolio Servicing Inc., No. 09-cv-02726, slip op. at 9-10, 12 (E.D. Pa. June 28, 2010).

Accordingly, the Court will dismiss Counts I, II, III and VI pursuant to the doctrine of issue preclusion.

### 2.    Res Judicata

Res judicata, or claim preclusion, bars Counts IV and V of the Complaint because Plaintiff had a full and fair opportunity to litigate these claims in the State Foreclosure Action and/or the First Federal Action.

The Pennsylvania Supreme Court, in Balent v. City of Wilkes-Barre, 669 A.2d 309 (Pa. 1995), described Pennsylvania law on the doctrine of res judicata, or claim preclusion, as follows:

> Any final, valid judgment on the merits by a court of competent jurisdiction precludes any future suit between the parties or their privies on the same cause of action. Res judicata applies not only to claims actually litigated, but also to claims which could have been litigated during the first proceedings if they were part of the same cause of action.

Id. at 313 (internal quotations omitted).  It is well-settled that "[f]or claim preclusion to apply,

Pennsylvania requires that the two actions share the following four conditions: (1) the thing sued

upon or for; (2) the cause of action; (3) the persons and parties to the action; and (4) the capacity

of the parties to sue or be sued." R& J Holding Co. v. Redev. Auth. of Cnty. of Montgomery,

670 F.3d 420, 427 (2011) (citing Bearoff v. Bearoff Bros., Inc., 327 A.2d 72, 74 (Pa. 1974)).

In other words, claim preclusion "bars any new claims where there is an essential

similarity of the underlying events giving rise to the various legal claims." Byrd v. City of Phila.,

No. 06-cv-1957, 2006 WL 2346283, at *2 (E.D. Pa. Aug. 10, 2006) (Bayslon, J.) (internal

quotations omitted) (noting that if "the material facts alleged in both suits are the same, the acts

complained of are the same, and the witnesses and documents would be the same," then claim

preclusion exists "in part to prevent the exact type of piecemeal litigation" that would follow).

In Counts IV and V, Plaintiff alleges "civil conspiracy" and "violations of the

Pennsylvania State Constitution," respectively.  (Compl. ¶¶ 33-41.) In making these allegations,

Plaintiff cites "the Fraudulent Foreclosure Action," "Fraudulent Assignment Documents supplied

by Select Portfolio Servicing," the "Fraudulent Mortgage Contract," Plaintiff's "lack of

education of laws" and SPS and CS achieving a "Summery [sic] Judgment" against him in the

State Foreclosure Action.  (Id.)  Plaintiff cited the same material facts, acts complained of, and

documents in the State Foreclosure and First Federal Actions.

Plaintiff's claim in the First Federal Action that SPS and its "Council [sic] EXPLOITED

the damages caused by the Defendant, which rendered [Plaintiff] unable to afford legal council

[sic]" (Am. Compl. ¶ 2), forms the basis of Plaintiff's claim for "civil conspiracy" in this Second

Federal Action. In the present Complaint, Plaintiff alleges that SPS "has claimed ownership of

the claimed Fraudulent Mortgage contract and used it to create profits" to Plaintiff's detriment.

(Compl. ¶ 33.)  Similarly, Judge Davis held in the First Federal Action that Plaintiff's allegation

that SPS used the "claimed Mortgage" to "enrich themselves" (Am. Compl. ¶ 5) failed "as a

matter of law."  Kliesh v. Select Portfolio Servicing Inc., No. 09-cv-02726, slip op. at 10 (E.D.

Pa. June 28, 2010).  Plaintiff offered, as evidence of "unlawful enrichment" by SPS and CS, that

both defendants had "relied on the claimed Mortgage contract and the alteration of the Payment

Due Date" to charge Plaintiff with "unlawful late fees." (Am. Compl. ¶ 5.)  Plaintiff thus offers

the same material facts and acts complained of as evidence for his present claim of "civil

conspiracy" as he offered in the First Federal Action.[5]

        Likewise, the allegations asserted in Plaintiff's "Fifth Cause of Action" for "violations of

Pennsylvania State Constitution" are taken from earlier acts complained of and material facts

alleged in the First Federal Action. Plaintiff alleged in the First Federal Action that SPS and its

legal counsel used the mortgage contract and the "Fraudulent Foreclosure Action" to render

Plaintiff "unable to afford legal council [sic]."  (Am. Compl. ¶ 2.) These allegations form the

basis of Plaintiff's claims of constitutional violations, where he alleges that Defendants "relied

on Kliesh's lack of education of the laws and the financial damages caused. Rendering him

unable to retain legal council [sic] due to lack of funds, caused by . . . the Fraudulent Mortgage

Contract . . . [and the] Fraudulent foreclosure Action." (Compl. ¶ 40.)

        As evidenced by Plaintiff's energetic defense of the State Foreclosure Action and his

pursuit of the First Federal Action, he has had a full and fair opportunity to litigate his claims for

---

[5]Plaintiff made a similar allegation in his series of counterclaims brought in the State
Foreclosure Action, namely, that SPS "used an ILLEGAL Mortgage Contract to claim unlawful
monthly payments."  (See Pl.'s Mot. of Counterclaims, attached to Defs.' Mem. Law Supp. as
Ex.. J.)

conspiracy and constitutional violations. Accordingly, Counts IV and V are dismissed pursuant to the doctrine of res judicata.

### D. Statute of Limitations

Finally, Counts I through VI are also barred by their respective statutes of limitations. Plaintiff's claims for fraud, civil conspiracy, violation of the state Constitution and infliction of emotional distress, must be made within two years. 42 Pa. C.S. § 5524(7). Plaintiff's allegations of TILA violations must have been made within one year. 15 U.S.C. § 1640(e). For causes of action for unjust enrichment, there is a four-year statute of limitations. 42 Pa. C.S. § 5525(a)(4); Cole v. Lawrence, 701 A.2d 987, 989 (Pa. Super. Ct. 1997).

A statute of limitations begins to run "from the time the cause of action accrued," which the Third Circuit has interpreted to mean when "the first significant event necessary to make the claim suable" occurs. Ross v. Johns-Manville Corp, 766 F.2d 823, 826 (3d Cir. 1985) (internal quotations omitted). Here, that "significant event" is the commencement of the initial foreclosure proceedings.[6] Plaintiff entered into the mortgage agreement at issue on September 18, 1997. In February, 2003, Plaintiff stopped paying his monthly mortgage, insurance premiums, and property taxes, after which SPS sent monthly statements informing him of his debt. On January 19, 2005, SPS provided Plaintiff with Act 91 notice in writing of his default, which Plaintiff did not take any action to cure. On October 4, 2005, SPS commenced the State Foreclosure Action against Plaintiff. Plaintiff filed the present Complaint on January 30, 2012, over six years after

---

[6]Although the statute of limitations arguably could have started to run on the date that Plaintiff defaulted on the mortgage agreement, the Court will give Plaintiff the benefit of designating the triggering event as the commencement of the initial foreclosure proceedings. Either way, the result is the same.

SPS commenced the initial foreclosure proceedings.

Contrary to Plaintiff's contention, equitable tolling of the statutes of limitations is not appropriate under the circumstances. Equitable tolling is available "in three general scenarios: (1) where defendant actively misleads a plaintiff with respect to her cause of action; (2) where the plaintiff has been prevented from asserting her claim as a result of other extraordinary circumstances; or (3) where the plaintiff asserts her claims in a timely manner but has done so in the wrong forum." Lake v. Arnold, 232 F.3d 360, 370 n.9 (3d Cir. 2000).

As the Third Circuit previously observed, Plaintiff's argument that the statutes of limitations should be equitably tolled because CS and SPS " 'fraudulently concealed their misconduct by obtaining the state judgment' . . . misses the point." Kliesh v. Select Portfolio Servicing Inc., 419 F. App'x 268, 271 (3d Cir. 2011). Likewise, Plaintiff's new contention that ESCM "conspired" with SPS to "file the Fraudulent Foreclosure Action to Defraud [Plaintiff] out of his Property" (Compl. ¶ 52) also misses the point. While Plaintiff seems to assert that Defendants' actions did, in fact, prevent him "from recognizing the validity of [his] claim within the limitations period," Mathews v. Kidder, Peabody & Co., 260 F.3d 239, 256 (3d Cir. 2001), his spirited defense of both the State Foreclosure Action and the First Federal Action belies that claim.

Accordingly, Counts I through VI are barred by their respective statutes of limitation.

### E. Defendants' Motion to Preclude

Although the Court will dismiss the Complaint in its entirety, the Court does not find it appropriate to grant Defendants' motion to preclude Plaintiff from commencing further actions at this time.  However, the Court advises Plaintiff that he may be subject to sanctions for the

repetitive filing of meritless actions against Defendants or their affiliates concerning the subject matter at issue in the instant action.

## V.      Conclusion

For the reasons set forth above, Defendants' Motion to Preclude is DENIED, Defendants' Motion to Dismiss is GRANTED, and Plaintiff's claims are DISMISSED with prejudice.

An appropriate order follows.

O:\CIVIL 12\12-548 Kliesh v Select Portfolio Servicing\Memo re Motion to Preclude & Motion to Dismiss.wpd